# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

FILED

APR 06 2023

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

I, Brendan DeBoer, a Task Force Officer with Homeland Security Investigations ("HSI"), being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, an electronic device, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am currently the Deputy Director of the 9th Judicial District Drug Task Force and employed by the Attorney General's Office of the 9th Judicial District in the State of Tennessee. I am a Task Force Officer assigned to Homeland Security Investigations in Knoxville, Tennessee. I have been employed with the 9th Judicial Drug Task Force since 2011 and prior to 2011, I was a Post Certified Police Officer with the City of Loudon Police Department in Loudon, Tennessee. I have been an HSI TFO since September 2022. I have been in the field of law enforcement for approximately 16 years. My primary duties now involve the investigation of the Tennessee Drug Control Act violations. I have participated in investigations involving small and large-scale narcotics on the state and federal level. I have used overt and covert methods of investigation to include but not limited to undercover operations, search warrants, controlled deliveries, interview/interrogation, controlled purchases, and long-term surveillance operations. I have received specialized training on/in narcotics investigations, drug trafficking, search warrant writing and preparation, surveillance, and criminal investigations. I have participated in, organized, and initiated several investigative efforts that have targeted drug dealers and their

criminal organizations on both the federal and state level. The investigations in which I have participated in have resulted in the arrest, prosecution, and conviction of individuals who have smuggled, received, and distributed controlled substances, including marijuana, cocaine, heroin, fentanyl, methamphetamine, MDMA, and prescription pills, to name a few, as well as the seizure of those illegal drugs and proceeds from the sale of those drugs. While conducting criminal investigations, I have conducted lawful searches of residences, businesses, and other areas under the control of individuals who were trafficking or dealing in controlled substances. I have debriefed and interviewed defendants and informants who have extensive knowledge of drug trafficking, drug dealing/distribution, and criminal organizations. In addition, I have conducted, in connection with these and other cases, follow-up investigations concerning the identification of co-conspirators through the use of drug ledgers, telephone records, bills, receipts, and photographs.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The property to be searched is one cell phone (TARGET DEVICE 1) recovered from Jose Alfredo LOPEZ Colin ("LOPEZ"), further described as a White Apple I-Phone located during the arrest of LOPEZ on March 30, 2023.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. In Spring 2022, the United States Postal Inspection Service ("USPIS") became aware of suspicious packages being sent through the USPS, from several area Knoxville, TN post offices to Santa Rosa, California and vicinity, a source area for controlled substances. Upon

further investigation of the return address information listed on many of the outbound parcels, law enforcement determined the use of fictitious names and/or variations of true names and addresses.

7. Through physical surveillance of delivery addresses and as well as the review of video surveillance obtained from the South Station Post Office in Knoxville, Tennessee, law enforcement identified LOPEZ as the mailer of multiple parcels suspected to contain contraband such as drug proceeds and/or US currency. LOPEZ was also identified as the mailer on over a dozen other outgoing parcels to target addresses in Santa Rosa, California, and vicinity. On many of these parcels, LOPEZ listed variations of his name as well as fictitious names such as, "Juan Colin", "Juan Perez" and "Rafael Lopez." Further review of video surveillance revealed LOPEZ was operating a black Cadillac sedan.

8. On or about February 2nd, 2023, law enforcement identified a package shipped by Jose LOPEZ-COLIN from a Knoxville Post Office. Law enforcement intercepted this package while enroute to California. Law enforcement identified the contents of this box as $5800 dollars in US Currency.

9. On or about March 2nd, 2023, law enforcement identified a package shipped by Jose LOPEZ-COLIN from a Knoxville Post Office. Law enforcement intercepted this package while enroute to California. Law enforcement identified the contents of this package to be $7220 dollars in US Currency.

10. On or about April 4, 2022, law enforcement conducted a traffic stop on the black Cadillac Sedan in Knoxville, Tennessee. The occupants of the vehicle were identified as Luis PLANCARTE Montejano, Rene CAMACHO, and Jose Alfred LOPEZ Colin.

11. As the investigation progressed, law enforcement determined CAMACHO was associated with and/or residing at 316 Barrar Avenue, Knoxville, Tennessee. Law enforcement also learned CAMACHO had an active felony Violation of Probation with the Tennessee Department of Corrections. On March 28, 2023, the Honorable U.S. Magistrate Judge Debra C. Poplin granted a search warrant for the residence of 316 Barrar Avenue, Knoxville, Tennessee.

12. On March 30th, 2023, law enforcement arrested LOPEZ at 3609 Namco Lane, Louisville, Tennessee, for an outstanding state warrant. LOPEZ gave consent to a search of his residence, 3609 Namco Lane, which resulted in locating approximately 700 grams of suspected cocaine, approximately 26 pounds of marijuana, one firearm, and other evidentiary items pertinent to this investigation. LOPEZ was in possession of a cell phone (TARTGET DEVICE 1)

13. On March 30, 2023, law enforcement conducted a controlled delivery of a USPS parcel at 1227 Exeter Avenue, Knoxville, Tennessee. A United States Postal Inspector posed as a USPS letter carrier and delivered the parcel to the residence. Law enforcement conducted surveillance in the vicinity of 1227 Exeter Avenue. Approximately one hour later, a vehicle arrived at 1227 Exeter Avenue. A male, later confirmed to be Rene CAMACHO, exited the vehicle, retrieved the parcel from the residence and placed it in his vehicle. Approximately 15 minutes later, CAMACHO arrived at 316 Barrar Avenue. Upon CAMACHO's arrival at 316 Barrar Avenue, law enforcement executed the residential search warrant. CAMACHO was taken into custody without incident and a search of the rental vehicle he was operating yielded approximately 10 vacuum-sealed bags containing bulk marijuana. CAMACHO was found to be in the possession of a cell phone and a second cell phone was observed in the seat of the rental vehicle. A search of the residence yielded: bulk U.S. currency, bulk marijuana, cocaine, firearms,

drug paraphernalia, wire transfer receipts, USPS money orders, USPS receipts, shipping and packaging materials, and fraudulent identity documents. Law enforcement also located various documents containing the name "Jose Lopez," to include a payment receipt for "Storage Rentals of America, 3980 Papermill Drive NW, Knoxville, TN 37909." This receipt, dated January 10, 2023, contained the name "Jose Alredo Lopez Colin" with a Sonoma, CA address as well as Unit "B010." All the cell phones were seized as evidence.

14. On March 30th, 2023, law enforcement executed a search warrant at 3980 Papermill Dr. Unit B010. This search resulted in locating approximately fourteen firearms, one suppression device, two law enforcement type tasers, body armor, ammunition and other misc firearm equipment.

15. Based on my training and experience, I know drug traffickers commonly use their cellphones to conduct their drug trafficking business. Drug traffickers communicate with potential suppliers, customers, and co-conspirators about the day to day to operations. Moreover, items on cell phones other than communications frequently prove to contain admissible evidence establishing possession and use of a particular device, including photographs, videos, contact lists, location data, and other information about a drug trafficker.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

5

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

6

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

17. Based on my training, experience, and research, I believe that the TARGET DEVICES have capabilities that allow them to serve as a wireless telephone, digital camera, GPS

7

navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of TARGET DEVICE 1 described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
TFO Brendan DeBoer
HSI

Subscribed and sworn to before me
on April 4, 2023

_____
DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

The devices to be searched are the cell phone recovered on or about March 30, 2023, from a residence in the Eastern District of Tennessee, where LOPEZ was arrested by law enforcement. The devices are further described below:

TARGET DEVICE 1 – a White Apple I-Phone located during the arrest of LOPEZ on March 30, 2023. A photograph of the front and back of TARGET DEVICE 1 is below:



This warrant authorizes the forensic examination of TARGET DEVICE 1 for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on TARGET DEVICE 1 described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 and 846, including:

   a. lists of customers and suppliers, along with related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information about schedules or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records.

   f. Communications and related contacts that relate to the trafficking of narcotics, the movement of cash proceeds, or the payment for illegal drugs.

   g. Evidence related to the possession or distribution of illegal drugs, including but not limited to photographs, communications, location data.

2. Evidence of user attribution showing who used or owned the Device including, among other things, photographs, geo-location information, communications, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Evidence of motive, opportunity, or intent, such as bills, communications, photographs, geo-location information, logs, documents, browsing history, and other items.